IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL A. SCHNEIDER
and AMY L. SCHNEIDER

        Plaintiffs,

    v.                                   No. 13-4094-SAC

CITIBANK, NA,
CITIGROUP, INC., and
PRIMERICA FINANCIAL SERVICES
HOME MORTGAGES, INC.

        Defendants.

MEMORANDUM AND ORDER

This case, removed from state court on the basis of diversity and federal question jurisdiction, comes before the court on Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6). In response to the motion, Plaintiffs have "withdrawn" the only two counts that facially provided federal question jurisdiction: Count II, the Equal Credit Opportunity Act; and Count III, the Real Estate Settlement Procedures Act, 12 USC § 2601 *et seq.* Dk. 13, p. 30. The following state law claims remain: breach of contract, conversion, fraud, and violation of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* (deceptive and unconscionable acts). Because the complaint asserts over $75,000 in damages by the in-state party, and the notice of removal states the underlying facts supporting the assertions that the amount in controversy exceeds that jurisdictional amount

and that the parties are diverse, the court exercises diversity jurisdiction over these claims. S*ee McPhail v. Deere & Co.*, 529 F.3d 947 (10th Cir. 2008).

## I. Standard for Motion to Dismiss

To survive a motion to dismiss, a complaint must have facial plausibility.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth

a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 2012 WL 364058, at *3 (10th Cir. Feb. 6, 2012).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court accepts all well-pled factual allegations as true and views these allegations in the light most favorable to the nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). The court, however, is not under a duty to accept legal conclusions as true. *Iqbal*, 556 U.S. 662. "Thus, mere 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' will not suffice." *Khalik,* 2012 WL 364058, at *2 (10th Cir. Feb.6, 2012) (quoting *Twombly*, 550 U.S. at 555).

In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008). But in considering the complaint in its entirety, the Court also examines any documents "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and documents attached to the complaint,

*Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1189 (10th Cir. 2012) (quotations and citations omitted)..

## II. Facts

In 2007, Plaintiffs took a residential mortgage loan originated by Defendant Citicorp Trust Bank, fsb, now known as Citibank, N.A. ("Citicorp"). Citicorp originated the loan through communications Plaintiffs had with a representative of Defendant Primerica Financial Services Home Mortgages, Inc. ("Primerica"). Plaintiffs also chose to participate in a Payment Waiver Protection Program and an Equity Builder Interest Rate Discount Program.

Plaintiffs allege that Citicorp failed to properly administer the loan, including overcharging them interest on the loan in violation of the Equity Builder Interest Rate Discount Program, not properly processing their request to use the Payment Waiver Protection Program, and overcharging them. Plaintiffs allege they applied in 2010 to Citicorp for refinancing of the loan, but were denied despite their good credit and qualifications. But on August 2, 2010, Plaintiffs obtained refinancing from HomeQuest.  In connection with that closing, Plaintiffs allege Citicorp required them to pay a prepayment penalty of $829.42 in breach of the terms of the Note, and that Citicorp otherwise misrepresented the true amount needed to satisfy the loan, and overcharged them $6.76 as a payoff amount as a condition of

releasing its lien on the mortgage. Other facts will be discussed below as relevant to the issues.

### III. HOLA Preemption

Defendants contend that Plaintiffs' claims concerning the origination, processing and payoff of their 2007 loan and Plaintiffs' request for refinancing are preempted by the Home Owners' Loan Act, 12 USC § 1461 *et seq.* (HOLA). Defendants assert that these claims purport to impose on Citicorp, a federal savings bank (or its successors,) requirements regarding the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 CFR § 560.2(b)(10). Defendants contend that the OTS regulations occupy the field of lending regulation for federal savings associations.

But Defendants show no precedent construing HOLA preemption as broadly as they do. Instead, precedent consistently illustrates that at most, HOLA preempts the field of *regulatory control* over federal savings associations. *See e.g., Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 151, 102 S.Ct. 3014, 3021 (1982) (finding FHLB regulations have the force and effect of statute and preempt all conflicting state laws); *Home Mortg. Bank v. Ryan*, 986 F.2d 372 (10th Cir. 1993) (finding Office of Thrift Supervision (OTS) regulation requiring approval for thrift to bank conversion preempted state law); *Federal Home Loan Bank Bd., Washington,*

*D.C. v. Empie*, 778 F.2d 1447, 1448 (10th Cir. 1985) (finding state statute prohibiting entities not conducting a banking business under the state banking laws to use various forms of the word "bank" in advertising was preempted by federal law).

Plaintiffs' complaint primarily seeks damages, fees and costs arising from alleged misrepresentations, and does not seek an injunction or attempt to impose any regulation upon any Defendant or to effect any ongoing change in Defendants' manner of doing business regarding mortgages. In such cases, preemption is not the norm. *See* e.g., *Watkins v. Wells Fargo Home Mortg.*, 631 F.Supp.2d 776, 787-88 (S.D.W.Va. 2008) (finding no HOLA preemption of fraud claim but finding preemption of claim attacking the appraisal methodology used by the bank); *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, *7 (N.D.Cal. Jan. 28, 2011) (finding plaintiffs' intentional misrepresentation claim not preempted by HOLA because it "d[id] not attempt to impose substantive requirements regarding loan terms, disclosures, or servicing or processing procedures"); *Becker v. Wells Fargo Bank, N.A.*, 2011 WL 1103439 (E.D.Cal. Mar. 22, 2011) (finding no HOLA preemption where the plaintiff "allege[d] that he was promised a modification even though [the lender] never intended to modify his loan or seriously consider his application," because the "plaintiff's fraud claim

appears to arise from a more 'general duty not to misrepresent material facts,' and therefore it does not necessarily regulate lending activity.")

Plaintiffs' claims relate to Defendants' issuance, servicing, and refusing to refinance the loan, "[b]ut the standard for express preemption is more than "relates to." *See Coffman v. Bank of America, NA,* 2010 WL 3069905, at *6 (S.D.W.Va. 2010) (citing *In re Ocwen Loan Servicing,* 491 F.3d at 643–44). The claim must "purport[ ] to impose requirements" regarding loan servicing for express preemption to apply. 12 C.F.R. § 560.2(b)." *Dixon v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 336, 357 (D.Mass. 2011) (finding no HOLA preemption where the borrower did not attack the lender's underlying loan servicing policies and practices, but rather sought to hold the lender to its word, noting "requiring a bank to perform the obligations of its contract in good faith implicates none of the concerns embodied in HOLA.") quoting *Bishop v. Ocwen Loan Servicing, LLC.*, 2010 WL 4115463 at *5 (S.D.W.Va. 2010).

Importantly, the plain language of the regulation Defendants cite states that the types of claim brought by Plaintiffs (contract and tort claims) are *not* preempted by HOLA:

> … OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to

regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 CFR § 560.2(b)(10). The excepted paragraph (c) encompasses the types of claims Plaintiffs bring here:

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

...

(4) Tort law;

*Id*. Thus the "OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *In re Ocwen Loan Servicing*, 491 F.3d at 643-44 (giving the illustrations of non-preempted claims of fraud and breach of contract related to mortgage servicing).

The Court has looked beyond the labels given to Plaintiffs' claims to the substance of each claim and determined that enforcement of Plaintiffs' causes of action will not interfere with or contravene lending, the regulation of which Congress has committed exclusively to a federal agency. *See In re*

*Ocwen Loan Servicing*, 491 F.3d at 643; *Watkins,* 631 F.Supp.2d at 782–83.

Accordingly, the Court is not persuaded that HOLA preempts any of Plaintiffs'

remaining claims. *Cf Watkins, at *26 (*finding no conflict preemption on

fraud claim because "[n]o federal law permits a national bank to

misrepresent to borrowers the nature of its charges." ).

## IV. Breach of Contract

Defendants assert several reasons why Count I, breach of contract,

fails to state a claim for relief.

### A. No Contract

First, Defendants contend that the note which was allegedly breached

is not a valid contract between Plaintiffs and Citicorp because Citicorp never

signed that document, citing *Demaras v. Smith*, 176 Kan. 416 (1954). But

*Demaras*, in addressing the effect of the lender's failure to sign the note on

the application of the statute of frauds, stated the court's view that the

lender's "acceptance of that instrument made it a contract in writing upon

which suit could be instituted and the same rights maintained as though it

had been signed by him." 176 Kan. at 421 (citing other Kansas decisions in

support and noting that "the only signatures necessary to the validity of a

promissory note are the makers thereof ..."). Here, the note specifically

references "a Mortgage, Deed of Trust, or Security Deed [the "Security

Instrument"], dated the same date as this Note," which relates to the

promises made by the borrower in the Note. Under Kansas law, when two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together to determine the intent, rights and interests of the parties. *In re Villa West Associates,* 146 F.3d 798, 803 (10th Cir. 1998). Defendants treated the promissory note and its related documents as a valid contract in seeking to collect mortgage payments from Plaintiffs. *See* Dk. 1, Exh. E. This Court shall do no less.

### B. No Breach of Good Faith and Fair Dealing

Defendants also assert that Plaintiffs' claims for breach of good faith and fair dealing cannot be brought in the absence of a valid contract between the parties. *See Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010). Because Defendants have not shown, as a matter of law, that Plaintiffs' action is not based on a valid contract between the parties, this argument fails.

### C. Merger Doctrine

Defendants contend that the merger doctrine applies, so that prior communications or agreements are merged into the final contract executed by the parties, and evidence of conflicting oral communications is barred. Dk. 8, p. 16. But Defendants do not show that the note contains a merger or integration clause, which gives rise to the presumption that the writing is

10

fully integrated. *See Rajala v. Allied Corp*, 66 B.R. 582, 594 (Dk. Kan. 1986),

citing J. White & R. Summers, Uniform Commercial Code, § 2-13 (1972).

Instead, the note reflects the parties' intent to the contrary by specifically

referencing the Mortgage, Deed of Trust, and Security Deed, dated the same

date as the Note, which concern the same subject matter, which are read

and construed together to determine the intent, rights and interests of the

parties. *In re Villa West Associates,* 146 F.3d 798. Accordingly, Defendants

have not shown that the Kansas doctrine of merger applies to these

documents. *See Avien Corp v. First Nat'l Oil, Inc.*, 32 Kan. App.2d 106, 111

(2003) (noting the importance of the parties' intent to the doctrine of

merger).

### D.  Kansas Credit Agreement Statute

Defendants also contend that K.S.A. 16-118(c) bars admission of oral

agreements outside the written contract. That statute, which subjects "credit

agreements" to a rule analogous to the statute of frauds, prohibits actions

on a credit agreement unless the agreement is in writing and is signed by

both the debtor and creditor. *See Wells v. State Bank of Kingman*, 24

Kan.App.2d 394 (1997). It also requires credit agreements to "contain a

clear, conspicuous and printed notice to the debtor" informing the debtor

that the credit agreement overrides all prior and contemporaneous oral

agreements.

But the definition of "credit agreement" expressly excludes promissory notes, mortgages, security agreements and other specified agreements which are usually signed only by the debtor. *See* K.S.A. 16-117(a). The allegations in this case involve a promissory note and real estate mortgage, making this statute inapplicable. *See In re Bryant Manor, LLC*, 434 B.R. 629 (2010).

### E. Untimely Claim re: Interest

Defendants additionally contend that even if the Note constitutes a contract, Plaintiffs' claim alleging that Defendant(s) overcharged interest is time-barred by the five-year statute of limitations. Defendants show that a cause of action for breach of contract accrues when the contract is breached, that Citicorp allegedly failed to apply the correct interest rate on the loan beginning on September 17, 2007, when the loan was first consummated, and that Plaintiffs' suit was not filed until over five years and six months thereafter.

Plaintiffs agree that Kansas' five-year statute of limitations for actions based on breach of a written contract applies to this claim. Dk. 13, p. 17. *See* K.S.A. 60–511(1). But Plaintiffs contend that their breach of contract claim accrues not on the date they entered the loan agreement, but each time they made a recurring monthly payment which included the overcharged interest.

Kansas law establishes the general rule that a cause of action for a breach of contract accrues at the time the contract is breached. *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 410 (1978); *Beckman v. Kansas Dept. of Human Resources*, 30 Kan.App.2d 606 (2002). "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel v. Zuspann,* 247 Kan. 54 (1990).

But Kansas recognizes an exception for continuing contracts, thus a breach of an obligation to make payments under a continuing contract generally accrues at the time each payment becomes due.

> As stated previously, the law in Kansas is well-settled that breach of contract accrues at the time of the alleged breach regardless of the knowledge of the breach by the plaintiff at the time. Nevertheless, a continuing contract concept does exist in Kansas where a party is required to make payments pursuant to a contract. "Under Kansas law, a cause of action, thus giving rise to a separate cause of action for each failure to make payment when due." *G.N. Rupe v. Triton Oil & Gas Corp.,* 806 F.Supp. 1485, 1498 (D.Kan.1992). This theory has only been applied where continuing payments are required. See, e.g., *Oakview Treatment Centers of Kansas, Inc. v. Garrett,* 53 F.Supp.2d 1184, 1190 (D.Kan.1999); *Beltz,* 6 P.3d at 429; *In re Estate of Moe,* 240 Kan. 242, 729 P.2d 447, 449 (1986).

*Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 174 F.Supp.2d 1199, 1203 (D.Kan.2001). *See Beckman,* 30 Kan.App.2d 606 (finding cause of action for unpaid wages accrued monthly when employer failed to pay earned wages on the regularly monthly payday); *Beltz v. Dings*, 27

Kan.App.2d 507, 512 (2000) (finding "[a] cause of action for usury accrues with each payment made on a continuing contract.").

Thus under Kansas law, Plaintiffs' claims for breach of the contractually-agreed rate of interest accrued each time Plaintiffs paid the overcharged interest, not solely at the time the note was executed. Accordingly, the challenged payments made within the five years immediately preceding the filing of this action are timely, while those made earlier are time-barred.

## V. Conversion

Count IV of the Complaint alleges that Defendants converted Plaintiffs' money by charging and failing to return unearned fees.

Under Kansas law, conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. *Bomhoff v. Nelnet Loan Servs.*, 279 Kan. 415, 421 (2005)). Thus an action will not lie for conversion of a mere debt or chose in action. *Temmen v. Kent–Brown Chev. Co.*, 227 Kan. 45, 50 (1980). Where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor. *Id. Compare Claytor v. Computer Associates Intern., Inc.*, 262 F.Supp.2d 1188 (D.Kan. 2003) (finding that a dispute over wages owed does not state a claim for conversion under Kansas law); with

*Carmichael v. Halstead Nursing Center, Ltd.,* 237 Kan. 495, 501 (1985)

(holding that a check was specific property that could be converted).

The Kansas Supreme Court has held that where a debtor-creditor

relationship exists between a bank and a depositor, the proper action to

challenge a setoff of funds by the bank is one in contract, rather than

conversion. *Moore v. State Bank of Burden*, 240 Kan. 382, 387-388 (1986).

(finding no conversion where the bank unilaterally applied to the plaintiff's

outstanding balance on a car loan funds that Social Security had directly

deposited into plaintiff's account). There may, however, be a conversion of

funds in a depositor's account if the bank knows the funds are the property

of a third party, *Iola State Bank v. Bolan,* 235 Kan. 175, Syl. ¶ 8, 679 P.2d

720 (1984)). Here, no showing has been made that the Defendants may

have converted commercial paper or that the challenged funds belonged to a

third party. Instead, Plaintiffs' claim alleges solely that Defendants

overcharged her. This fails to state a claim for conversion under Kansas law.

## VI. Fraud

The complaint alleges fraud in connection with Citicorp's requiring

Plaintiffs to pay a prepayment penalty of $829.42 in August 2010 when

Plaintiffs refinanced their loan with an unrelated creditor. The alleged false

statement is that "$84,496.36 was due to clear the title to their real

property." Also, fraud is alleged in Defendants' overcharging Plaintiffs $6.76

as a payoff amount as a condition of releasing its lien on the mortgage in August of 2010, as was necessary for refinancing.

Defendants' sole challenge to Plaintiffs' fraud claim is timeliness.[1] Defendants assert that a fraud claim in Kansas must be brought within two years of discovery of the alleged fraud, *see* K.S.A. § 60-513(a)(3), that Plaintiffs are deemed to have discovered such fraud in August of 2010 when Defendants made the allegedly false statement, and that Plaintiffs allegedly paid the prepayment penalty and overcharge, rendering Plaintiffs' action untimely because it was not filed until over two years later, on May 24, 2013.

Plaintiffs respond that the cause of action for fraud did not accrue until 2011 when the Plaintiffs discovered various overcharges and Defendants refused to remit payment, revealing Defendants' "intent for the scheme at failure to return the funds." Dk. 13, p. 21. Plaintiffs' counsel sent Defendants a certified letter dated May 26, 2011, threatening litigation about how the 2007 loan was administered, about loan refinance issues surrounding broken promises, and about the pre-payment penalty, and requesting refunds. Plaintiffs contend that "it was not until there was no response to the May 2011 letter that Defendants displayed any actual intent which continues in

---

[1] The Court does not take any position on whether Plaintiffs' fraud claim contains the elements necessary to state a claim for relief, since Defendants have not raised this issue.

their failure to return money which is known or should be known by them to be the rightful property of Schneiders." Dk. 13, p. 19. *See* Dk. 1, p. 73; Dk. 13, p. 20.

K.S.A. 60–513(a)(3) provides that an action for relief on the ground of fraud shall be brought within two years, "but the cause of action shall not be deemed to have accrued until the fraud is discovered." The Kansas Supreme Court has interpreted "discovered" to mean a cause of action for fraud accrues when the defrauded party possesses actual or constructive notice of the fraud or when, with reasonable diligence, the fraud could have been discovered. *Miller v. Foulston, Siefkin, Powers & Eberhardt,* 246 Kan. 450, 465 (1990). See *Gates v. Kansas Farmers' Union Royalty Co.*, 153 Kan. 459 (1941) (finding "discovery of the fraud" means discovery by person defrauded of such facts indicating he had been defrauded as would cause a reasonably prudent person to investigate, and which if investigated with reasonable diligence would lead to knowledge of the fraud).

Here, by exercising reasonable diligence, the Plaintiffs could have read their note and discovered in 2007 that it stated, "I may make a full Prepayment or partial Prepayments without paying a Prepayment charge." Dk. 1, Exh. A. Plaintiffs knew or should have known in 2010 when Defendants required them to make the prepayment charge and other alleged overpayments that they were damaged by the alleged misrepresentations.

Plaintiffs' purported fraud claim, brought more than two years thereafter, is thus barred by the two-year statute of limitations.

## VII. KCPA Claim

Defendants contend that the acts alleged to support a violation of the Kansas Consumer Protection Act (KCPA) are outside the scope of that Act.

### A. No Consumer Transaction

The KCPA prohibits deceptive or unconscionable acts in connection with a "consumer transaction." Defendants contend that no "consumer transaction" occurred regarding the 2010 refinance because Plaintiffs did not obtain their desired refinancing with any Defendant. "'Consumer transaction'" means a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 50-624(c).

The Court declines to read the Act so restrictively. *See Via Christi Regional Medical Center*, Inc. v. Reed, __ Kan. __, 2013 WL 6714017, 16 (2013) ("the KCPA prohibits unconscionable *acts and practices*—not simply unconscionable *outcomes*. K.S.A. 50–627(b) specifically states that an unconscionable act or practice violates the KCPA "whether it occurs before, during or after a transaction."). "[T]he guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of

the consumer." *State ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 8 Kan.App.2d 57 (1982) (citing K.S.A. § 50–623).

Even though Plaintiffs did not obtain refinancing from Defendants in 2010, Defendants' grant of a home loan mortgage to Plaintiffs from 2007-2010 is a consumer transaction, and is the subject of Plaintiffs' claims. The Kansas Court of Appeals (KCOA) has held that the grant of a home loan mortgage by a bank to an individual is a "consumer transaction," *Brotherhood Bank and Trust Co.*, 8 Kan.App.2d 57, and the Court believes the Kansas Supreme Court would do the same.

### B. One-Time Events

Defendants also contend that the KCPA covers only one-time, single-occurrence events, not the servicing of a loan taken out months or even years earlier, citing *Queen v. Lynch Jewelers, LLC*, 30 Kan. App.2d 1026 (2002) (sale of diamond ring), *Porras v. Bell*, 18 Kan. App.2d 569 (1993) (sale of home), and *Haag v. Dry Basement, Inc.*, 11 Kan. App.2d 649 (1987) (faulty repair of basement). But these cases, while examining single events, do not establish that only one-time transactions qualify as consumer transactions under this Act.

### C. Mortgage Loan Servicing

Defendants next contend that the KCPA is inapplicable to complaints about the servicing of a mortgage loan after its origination, so Plaintiffs'

allegations concerning issuance of allegedly inaccurate billing statements, inaccurate use of the equity builder program, and charging a prepayment penalty fail to state a claim. Defendants rely on a statement by the KCOA that "the provisions of K.S.A. 50-626(b)(8) ... make no mention of debt collection practices or the manner in which a seller might exercise its remedies." *Cornerstone Homes, LLC v. Skinner*, 44 Kan. App.2d 88, 100 (2010). But the specific subsection cited in that case was to only one example of a deceptive practice, and provides no support for the contention that the KCPA is inapplicable to all debt collection practices.

Defendants' assertion is refuted by the Kansas comment to K.S.A. 50-627(b), which states that this subsection "forbids unconscionable advertising techniques, unconscionable contract terms, *and unconscionable debt collection practices.*" K.S.A. 50–627, comment 1 (emphasis added). *See State ex rel. Miller v. Midwest Service Bureau of Topeka, Inc.*, 229 Kan. 322 (1981) (stating, "It is clear that the act does apply to debt collection activities when engaged in by a creditor or his agent."; finding independent debt collection agency falls within definition of a "supplier" so as to be subject to provisions of Consumer Protection where various circumstances are met); *Cf, In re Kinderknecht*, 470 B.R. 149 (D. Kan. 2012) (finding fact questions precluded summary judgment where Plaintiff alleged that a

consumer debt settlement service engaged in unconscionable acts violative of the KCPA).

Similarly, the KCOA has found that the grant of a home loan mortgage by a bank to an individual is a "consumer transaction" within the meaning of the KCPA. KSA 50-624(c). *Brotherhood Bank and Trust Co.*, 8 Kan.App.2d 57 (relying on the plain language of the KCPA section defining "consumer transaction," coupled with preference for liberal construction of KCPA). And the Kansas Supreme Court, although not squarely addressing the issue, has resolved KCPA lender cases on their merits, rather than by finding the KCPA inapplicable. *See e.g., Gonzales v. Associates Financial Service Co. of Kansas, Inc.*, 266 Kan. 141 (1998) (finding insufficient facts to establish that a lender purposefully withheld relevant information or misstated facts with the intention to deceive the borrower in connection with origination fees charged on multiple loan refinancings). *See also Mortgage Electronic Registration Systems, Inc. v. Graham*, 247 P.3d 223, 231 (2010) (KCOA finding insufficient facts to show any unconscionable acts by mortgage lender under KCPA).

Federal courts, too, have recently applied the KCOA to mortgage transactions, finding that refinancing of a mortgage loan is a "consumer transaction" subject to the KCPA. *See Shane v. CitiMortgage, Inc.*, 2012 WL 3111730 (D.Kan. 2012) (rejecting the contention that the KCPA does not

apply to loan refinancing or other activity done during the servicing of a loan). *But see Bowers v. Mort. Elec. Registration Sys., Inc.*, No. 10-4141, 2012 WL 4747162, at *16 (D. Kan. Oct. 4, 2012) (finding "financial communications relating to a mortgage obligation… do not fall within the scope of the KCPA."). Having reviewed the Kansas cases cited in *Bowers*, the Court finds the rationale in *Shane* to be better reasoned and more persuasive than the rationale in *Bowers*. Accordingly, the Court is not persuaded that the KCPA is inapplicable to the facts in this case.

### D. Untimely Claim

Defendants next assert that the KCPA claim is untimely. They assert that a three year-statute of limitations applies to this claim, that the claim accrued when Plaintiffs took out the loan and entered the equity builder and payment waiver protection programs in September of 2007, and that the time expired before Plaintiffs filed this case in 2013.

Plaintiffs agree that their KCPA claims are governed by a three-year statute of limitations, but contend these claims did not accrue until Defendants engaged in their prohibited practices of demanding prepayment and collecting unearned money in the summer of 2010, and of refusing to return unearned funds. The court agrees with Plaintiffs.

Actions under the KCPA are subject to the three–year statute of limitations found in K.S.A. 60–512(2). *Alexander v. Certified Master Builders*

*Corp.*, 268 Kan. 812 (2000). Unlike Kan. Stat. Ann. § 60–513, the three-year statute does not include a period to discover the claim or to assess the damages before the limitations period begins to run. *Four Seasons Apartments, Ltd. v. AAA Glass Service, Inc.*, 37 Kan.App.2d 248 (2007). Nor does the continuing contract exception apply to non-contractual disputes, such as those brought under the KCPA. *In re Long*, 2010 WL 2178547, *3 (Bkrtcy. D. Kan. 2010). "A KCPA claim accrues when the KCPA violation occurs." *Id.*, p. 4.

Plaintiffs' complaint alleges multiple misleading statements upon which their KCPA claim is based, occurring after they took out the loan and entered the equity builder and payment waiver protection programs. Although the complaint does not always specify the date on which such statements or other acts alleged to violate the KCPA occurred, the context is in conjunction with Plaintiffs' refinancing of their loan, which occurred in August of 2010. Plaintiffs' KCPA claims accrued on or about that date and Plaintiffs' suit was timely brought within three years thereafter.

### E. Insufficient Allegations

Defendants also contend that Plaintiffs' allegations fail to raise a triable claim that Defendants engaged in any deceptive or unconscionable acts concerning the payoff amount, the prepayment penalty, the equity builder and payment waiver programs, or the interest rates. Defendants primarily

contend that even the allegedly fraudulent acts do not reach the level of unconscionability because the acts are not alleged to be so outrageous or unfair as to shock the conscience or offend the sensibilities of the court. In support of this proposition Defendants cite *Adams v. John Deere Co.*, 13 Kan. App.2d 489, 492 (1989). But that case was not a KCPA case, and nothing in the KCPA requires that conduct shock the conscience to be unconscionable. *See Shane*, 2012 WL 3111730, 6 (finding plaintiff had sufficiently alleged unconscionable acts by pleading that Defendant made misleading statements upon which she was likely to rely to her detriment).

Whether an action is unconscionable under the KCPA is a legal question for the court. *Via Christi,* 2013 WL 6714017, 16. That determination rests upon the facts, weighed in the sound discretion of the court.

> The determination of unconscionability, however, ultimately depends upon the facts in a given case, *State ex rel. Stovall v. DVM Enterprises, Inc.,* 275 Kan. 243, 249, 62 P.3d 653 (2003). And, to a great extent, the determination is left to the sound discretion of the trial court. 275 Kan. at 249, 62 P.3d 653.

*Via Christi*, at 16. Here, Plaintiffs have sufficiently pleaded unequal bargaining power, and that Defendant willfully misrepresented material facts regarding payments during the refinance process, and that those misrepresentations were likely to mislead consumers. The motion to dismiss these claims at this early stage shall therefore be denied.

## VIII.  Motion for Oral Argument

Plaintiffs have moved for oral argument, but the court finds that oral argument would not substantially assist in its determination of these matters, so denies this motion.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Dk. 7) is granted in part and denied in part in accordance with the terms of this memorandum and order.

IT IS FURTHER ORDERED that Plaintiffs' motion for oral argument (Dk. 19) is denied.

Dated this 21st day of January 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge