# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RANDALL A. and AMY L. SCHNEIDER, )
)
       Plaintiffs, )
)
v. ) Case No. 13-4094-SAC
)
CITIMORTGAGE, INC., et al., )
)
       Defendants. )

## MEMORANDUM AND ORDER

This matter comes before the court upon plaintiffs' Motion for Finding of Violation of Rule 30(b)(6)(ECF No. 419). Plaintiffs contend that Primerica, Inc.'s ("Primerica's") designee as a corporate representative under Fed. R. Civ. 30(b)(6) was unprepared for the deposition that occurred on December 29, 2016. For the following reasons, this motion is granted in part and denied in part.

### I.

Plaintiffs, Randall A. Schneider and Amy L. Schneider, bring claims against defendants, CitiMortgage, Inc. ("CitiMortage"); Citibank, National Association ("Citibank"); Citigroup, Inc. ("Citigroup"); and Primerica Financial Services Home Mortgages, Inc. ("Primerica"), for breach of contract and for violations of the Kansas Consumer Protection Act ("KCPA"). The claims involve defendants' alleged misconduct in handling the Schneiders' residential mortgage loan, and their 2010 loan refinance. The Schneiders allege that they were wrongfully assessed overcharges and fees and they were denied a loan refinance for which they were qualified.

Discovery in this case has been difficult. Both sides are responsible for the many problems that have occurred. The court has repeatedly attempted to get counsel to work

cooperatively, but success has been limited. Rather than recount all of the transgressions, the court shall turn immediately to the facts that underlie the instant motion.

The parties' efforts to complete the Rule 30(b)(6) depositions have been particularly difficult, to say the least. In August 2014, plaintiffs served their Rule 30(b)(6) notices.[1] The defendants responded with a motion to quash the deposition notices.[2] On September 29, 2014, the court conducted a telephone conference on this motion and other matters in the case. As a result of the telephone conference, plaintiffs agreed to withdraw the Rule 30(b)(6) notices. The court then denied the motion to quash as moot.[3] On March 12, 2015, plaintiffs again filed Rule 30(b)(6) notices.[4] Plaintiffs filed a Motion for Conference to address the disputes concerning the Rule 30(b)(6) topics.[5] Defendants then filed another motion for protective order and/or to quash plaintiffs' deposition notices.[6] Defendants again raised issues of overbreadth, undue burden and relevance.

On January 28, 2016, the court denied plaintiffs' motion for conference, finding that a telephone conference would not aid the parties.[7] In ruling on that motion, the court noted that "[t]hroughout this litigation the parties have failed to cooperatively resolve disputes."[8] The court directed the parties to resolve their disputes about plaintiffs' topics with some additional guidance provided in the order. The court ordered plaintiffs to file corrected Rule 30(b)(6) notices that complied with the court's directives by February 22, 2016.[9] The court directed plaintiffs to narrowly tailor their topics to comply with the "reasonable particularity" requirements of Rule 30(b)(6).[10] The court also found that plaintiffs' notice violated the court's prior orders to limit discovery to the

---

[1] ECF No. 81.
[2] ECF No. 92.
[3] ECF No. 134.
[4] ECF No. 227.
[5] ECF No. 228.
[6] ECF No. 232.
[7] ECF No. 275.
[8] *Id*. at 2.
[9] *Id*. at 6.
[10] *Id*. at 3.

claims still at issue in the case.[11] The court noted that if the defendants still sought a protective order after the plaintiffs' renewed notice, the parties were to confer and promptly seek to resolve their dispute. The court stated:

> Only after the parties have conducted this second, good-faith discussion will the court consider any additional motion on the issue. If briefing is necessary, the defendants shall list the topics for which they seek a protective order by number. Then for each topic they shall be required to show good cause why the court should issue a protective order under Federal Rule of Civil Procedure 26(c)'s enumerated categories: annoyance, embarrassment, oppression, or undue burden or expense.[12]

Conferences were held by the parties after the court's order of January 28, 2016. The parties conferred in excess of six hours in conferences on February 22, 2016, and March 2, 2016. After the first conference, plaintiffs provided a revised list, which the parties discussed at the second conference. On March 3, 2016, plaintiffs served another list of topics which included a number of new topics.

On April 7, 2016, plaintiff filed a notice to take the Fed. R. Civ. P. 30(b)(6) deposition of Primerica's corporate designee on May 10, 2016.[13] The notice listed 23 topics for examination.[14] On May 6, 2016, Primerica filed a motion for protective order and a motion to quash.[15] Primerica sought protection from and to quash certain topics in plaintiffs' notice.[16] On May 9, 2016, the court stayed the case after the parties sought mediation.[17] Mediation occurred on June 23, 2016. On July 6, 2016, the court was advised that the mediation was unsuccessful.[18]

On October 31, 2016, the court granted Primerica's motion in part and denied it in part.[19] The court quashed 13 of the topics designated in plaintiffs' notice. The court denied Primerica's

---

[11] *Id.* at 4.
[12] *Id.* at 5-6.
[13] ECF No. 338.
[14] *Id.*
[15] ECF No. 362.
[16] ECF No. 363
[17] ECF No. 367.
[18] ECF No. 368.
[19] ECF No. 390.

motion concerning the following topics: 13ii, 48, 49, 49yy and 50. The court directed the parties to complete the Rule 30(b)(6) deposition by December 31, 2016.[20] The deposition was subsequently scheduled for December 29, 2016.

Primerica produced Michael Turnage, a 30-year employee. Currently, he is in charge of field education. This position involves preparing new recruits for "life pre-licensing training." He has been in this position for three years. Prior to that, he was involved in marketing securities.

The deposition ultimately proceeded on the following twelve topics:

9. Whether any marketing agreements existed, and if so, the roles assigned to each or between each the defendants (CitiGroup, CitiMortgage , CitiBank, Primerica) or CitiAssurance (the PWP administrator or the a.k.a. American Health and Life Insurance Company) for the products (or features, referred to as the "PWP" waiver, $MART Equity Builder) on the Schneider 2007 loan or the 2010 refinance application.

10. The role and relationship of Primerica to CitiGroup , Inc. as it relates to the Schneider's 2007 loan or 2010 refinance.

13ii. All sources of indirect and direct revenue and total amount of revenue anticipated to be received by Primerica as a result from the Schneiders' initial loan application to Citibank (or Primerica) in or around May 2010, if the application had been approved.

41. Identify, describe and explain the terms, "Smart Loan Center", "Smart Solutions", "Citi-Quick", E-ZPay, and Timely Rewards as these applied to the Schneiders loan.

47ww. During May 2010 (the timeframe of the Schneiders' 2010 loan refinance application to Citibank submitted through Primerica), describe whether there were two application processes and the disclosures, or lack of disclosures, involved in each.

47zz. The corporate structure as between Primerica and Citibank , CitiMortgage, and CitiGroup in 2007 and 2010.

48. Explain and identify all sources of income received by Ms.Cobb, by Primerica related to the Schneiders 2007 mortgage loan, the Schneiders investments with

---

[20] *Id*. at 20.

Ms. Cobb, the Schneiders' insurance policies with Ms. Cobb, and the anticipated revenue for the Schneiders' 2010 refinance.

48xx. The timing of disclosures if disclosures were required in connection with a loan refinance application submitted through Primerica to Citibank during May 2010 (the timeframe of the Schneiders' 2010 loan refinance application to Citibank).

49. Explain and identify Primerica structure by divisions and associates by job category that make up the Primerica entity that dealt with Randal and Amy Schneider in the 2007 loan and 2010 refinance if any structural changes.

49yy. All direct and indirect sources of revenue and total amount of revenue anticipated by Primerica to be received by Primerica or Kerry Cobb in connection with the Schneiders ' initial refinance loan application to Citibank in or around May 2010, had the application been approved.

50. Identify and describe the Primerica compensation as it relates to the percentage in accordance with the organizational chart. (Divisions and for associates, employees , vice presidents, or other representatives that make up the Primerica entity including Ms. Cobb as the only identified individual).

62. Explain the features of the 2007 loan Primerica arranged for the Schneiders through Kerry Cobb including the $.M.A.R.T. Equity Builder, $.M.A.R.T. loan, the Payment Waiver Protection Program and any other names used to describe these programs.

II.

In their motion, plaintiffs raise a variety of arguments. Plaintiffs suggest that Mr. Turnage was not adequately prepared because he had no knowledge of home loans. Plaintiffs point out that Mr. Turnage's experience was in the area of life insurance, securities and human resources. Plaintiffs also suggest that Mr. Turnage did not adequately review the relevant documents. Plaintiffs specifically point to Mr. Turnage's failure to consider a 2006 marketing agreement. Finally, plaintiffs contend that Mr. Turnage was unprepared to respond to any of the twelve topics that were designated for the deposition.

III.

Rule 30(b)(6) governs deposition notices and subpoenas directed to organizations.[21] The Rule requires the named organization to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf.[22] The Rule also requires the designated witnesses to testify about information known or reasonably available to the organization.[23]

The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not of the individual deponents.[24] In a proper Rule 30(b)(6) deposition, "there is no distinction between the corporate representative and the corporation."[25] A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide "binding answers on behalf of the corporation."[26]

Rule 30(b)(6) is not designed to be a memory contest.[27] Certain questions may seek details so minute that a witness could not reasonably be expected to answer them.[28] However, a corporation has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."[29]

IV.

Prior to considering the aforementioned arguments, the court wants to address several other contentions raised by plaintiffs. Throughout the motion, plaintiffs assert that prior

---

[21] Fed.R.Civ.P. 30(b)(6).
[22] *Id.*
[23] *Id.*
[24] *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006).
[25] *Id.*
[26] *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999).
[27] Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 150 (S.D.N.Y. 1997).
[28] See, e.g., *United States ex. rel. Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 25 (D.D.C.2006) ("Without a photographic memory, [the witness] could not reasonably be expected to testify as to the loan numbers ... for sixty-three different loans.").
[29] *Starlight*, 186 F.R.D. at 639.

witnesses for other defendants were also unprepared for their Rule 30(b)(6) depositions. Plaintiffs somehow believe that the court should consider this information in deciding this motion. The court disagrees. Although all defendants are represented by the same counsel, the court intends to consider only the facts related to the deposition of Primerica's corporate representative.

Plaintiffs also make much of the fact that they discovered a marketing agreement after the deposition of Mr. Turnage. This marketing agreement, they argue, demonstrates that Mr. Turnage was not adequately prepared and that he gave inaccurate answers.

Following the deposition, plaintiffs discovered a 2006 marketing agreement between Primerica and certain Citibank-related entities. Plaintiffs contend this marketing agreement calls into question the accuracy of Mr. Turnage's testimony on several topics including Topic 9, where plaintiffs sought information on the marketing agreements for the products on plaintiffs' "2007 loan or the 2010 refinance application," and Topics 13ii, 48 and 49yy, where plaintiffs sought information on the amount of compensation due Primerica for the 2007 loan and the 2010 refinance application.

As correctly pointed out by Primerica, the 2006 marketing agreement does not concern secured debt such as a mortgage loan. Rather, it concerns an unsecured debt product called the "G.O.O.D. loan." There is no indication by plaintiffs that they ever received or were even aware of this type of loan. Thus, the court fails to find any support for plaintiffs' argument that the 2006 marketing agreement establishes that Mr. Turnage testified inaccurately on applicable marketing agreements or applicable compensation amounts.

Plaintiffs have also suggested that they are entitled to another deposition because Primerica produced "48 documents" before the deposition. Primerica counters that plaintiffs' suggestions concerning the 48 documents is incorrect in several ways. The court agrees.

On December 19, 2016, in preparing for the deposition, Primerica provided three documents to plaintiffs. The documents totaled 48 pages. The documents consisted of the following: (1) a marketing agreement between defendant Citicorp Trust Bank fsb and Primerica dated in 2004; (2) a 2010 supplement to the marketing agreement; and (3) a 7-page schematic describing the operation of the Citicorp administrative centers, i.e., the "Smart Loan Center" referred to in Topic 41.

The court finds no merit to plaintiffs' contentions concerning the documents produced on December 19, 2016. The court believes that Primerica properly produced these documents in response to the topics that were to be addressed at the Rule 30(b)(6) deposition. The documents were produced sufficiently in advance of the deposition to allow plaintiffs to properly review them. Mr. Turnage testified about both of the marketing agreements. Plaintiffs' counsel chose not to ask any questions about the schematic describing the operation of the Smart Loan Center. The court fails to find that plaintiffs are entitled to another deposition based upon the production of these documents.

The court next turns to plaintiffs' contention that Mr. Turnage was not adequately prepared because he had no personal knowledge of mortgage loans. The court also finds no merit to this argument. As previously noted, when served a subpoena under Rule 30(b)(6), an organization has a duty to prepare its designee "to fully and unevasively answer questions

about the designated subject matter."[30] This requires educating the designee about "information known or reasonably available to the organization."[31] In other words, personal knowledge of the designated subject matter by the selected deponent is of no consequence."[32]

Finally, the court turns to plaintiffs' contention that Mr. Turnage was not prepared to respond to any of the topics set forth in their Rule 30(b)(6) notice. In their reply, plaintiffs note that Primerica failed to even mention Topics 47ww, 48 and 62 in its response. Plaintiffs have erred in their contention that Primerica failed to mention Topic 48 in its response.[33] But, Primerica did not mention Topic 47zz.

The court has conducted a thorough review of Mr. Turnage's deposition along with the arguments of the parties. The court is persuaded that Mr. Turnage was not properly prepared to testify concerning the following topics: 41, 47ww and 49. The court finds that he was prepared to testify on the other topics. He displayed a knowledge and understanding of these areas that was sufficient to meet the requirements of Rule 30(b)(6). Plaintiffs' efforts to suggest that Mr. Turnage did not provide adequate information on a number of the topics must fail. Absolute perfection is not required.[34] Mr. Turnage, however, was unable to give testimony falling under the scope of Topics 41, 47ww and 49.

With respect to Topic 41, Mr. Turnage was unable to testify about several of the terms contained in that topic. He was unable to define those terms and he made no effort to determine the meanings of those terms.

---

[30] *Theglobe.com, Inc.*, 236 F.R.D. at 527-28.
[31] Rule 30(b)(6). See also *Sprint Communications Co., L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL, 2007 WL 2333356, at *5 (D.Kan. Aug. 15, 2007).
[32] *Id.*
[33] ECF No. 431, at 7-8 n.5 and 14.
[34] *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2015 WL 11122120, at *3 (D.Kan. July 1, 2015).

With respect to Topic 47ww, Mr. Turnage was unable to describe whether there were two application processes and the disclosures, or lack of disclosures, involved in each. His preparation consisted of reviewing the 2010 loan document. However, he could not point to any guidelines concerning the application process or any disclosures that were required.

Finally, concerning Topic 49, Mr. Turnage failed to provide any testimony on the corporate structure of Primerica. He indicated repeatedly that it varied depending upon the regional vice-president. He, however, failed to learn the structure involving regional vice-president Cobb that existed at the time of plaintiffs' 2007 loan and 2010 refinance.

Plaintiffs have the right under Rule 30(b)(6) to fully examine Primerica on Topics 41, 47ww and 49. Primerica shall produce a Rule 30(b)(6) witness to respond to these topics by July 21, 2017.

V.

Plaintiffs seek sanctions under Fed. R. Civ. P. 37, arguing that Mr. Turnage was so unprepared for the Rule 30(b)(6) deposition that his testimony was tantamount to a failure to appear for a deposition under Rule 37(d).

Courts have imposed a variety of sanctions for the failure to produce an adequately prepared Rule 30(b)(6) deponent which include: (1) costs and attorneys' fees incurred in filing a motion to compel[35], (2) monetary sanctions against the non-complying party and its counsel[36], (3) an order compelling compliance with Rule 30(b)(6) and requiring an educated

---

[35] *In re: Vitamins Antitrust Litigation*, 216 F.R.D. 168, 175 (D.D.C. 2003).
[36] *In re: Vitamins*, 216 F.R.D. at 175.

deponent to be produced[37], and (4) requiring a corporation to redesignate an adequately prepared witness to testify in the new deposition at the corporation's expense.[38]

Having carefully considered all of the circumstances involved, the court shall direct Primerica to produce a properly prepared witness to respond to the aforementioned topics. Primerica shall be responsible for the costs of the additional deposition, including the travel expenses of plaintiffs' counsel and the expenses of the court reporter. The scheduling of this deposition and the details concerning it should be addressed and handled by counsel for the parties.

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Finding of Violation of Rule 30(b)(6)(ECF No. 419) be hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendant Primerica, Inc. shall produce a prepared witness to properly respond to Topics 41, 47ww and 49. Primerica shall be responsible for the costs of this deposition, including the travel expenses of plaintiffs' counsel and the expenses of the court reporter.

**IT IS SO ORDERED.**

Dated this 29th day of June, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[37] *Foster–Miller, Inc., v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000)(also awarding costs and fees incurred in bringing the motion to compel).
[38] *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 202 (E.D.Tenn. 1986).