IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL A. and AMY L. SCHNEIDER, )
)
       Plaintiffs, )
)
v. ) Case No. 13-4094-SAC
)
CITIMORTGAGE, INC., et al., )
)
       Defendants. )

**MEMORANDUM AND ORDER**

This matter comes before the court upon plaintiffs' Motion for Finding of Violation of Rule 30(b)(6)(ECF No. 419). Plaintiffs contend that Citigroup. Inc.'s ("Citigroup's") designee as a corporate representative under Fed. R. Civ. 30(b)(6) was unprepared for the deposition that occurred on June 13, 2017. For the following reasons, this motion is denied.

I.

Plaintiffs, Randall A. Schneider and Amy L. Schneider, bring claims against defendants, CitiMortgage, Inc. ("CitiMortage"); Citibank, National Association ("Citibank"); Citigroup; and Primerica Financial Services Home Mortgages, Inc. ("Primerica"), for breach of contract and for violations of the Kansas Consumer Protection Act. The claims involve defendants' alleged misconduct in handling the Schneiders' residential mortgage loan, and their 2010 loan refinance. The Schneiders allege that they were wrongfully assessed overcharges and fees and they were denied a loan refinance for which they were qualified.

The court has previously detailed the difficulties in discovery in this case. The court will only address the problems that relate to the instant deposition. In August 2014, plaintiffs served

their Rule 30(b)(6) notices.[1] The defendants responded with a motion to quash the deposition notices.[2] On September 29, 2014, the court conducted a telephone conference on this motion and other matters in the case. As a result of the telephone conference, plaintiffs agreed to withdraw the Rule 30(b)(6) notices. The court then denied the motion to quash as moot.[3] On March 12, 2015, plaintiffs again filed Rule 30(b)(6) notices.[4] Plaintiffs filed a Motion for Conference to address the disputes concerning the Rule 30(b)(6) topics.[5] Defendants then filed another motion for protective order and/or to quash plaintiffs' deposition notices.[6] Defendants again raised issues of overbreadth, undue burden and relevance.

On January 28, 2016, the court denied plaintiffs' motion for conference, finding that a telephone conference would not aid the parties.[7] In ruling on that motion, the court noted that "[t]hroughout this litigation the parties have failed to cooperatively resolve disputes."[8] The court directed the parties to resolve their disputes about plaintiffs' topics with some additional guidance provided in the order. The court ordered plaintiffs to file corrected Rule 30(b)(6) notices that complied with the court's directives by February 22, 2016.[9] The court directed plaintiffs to narrowly tailor their topics to comply with the "reasonable particularity" requirements of Rule 30(b)(6).[10] The court also found that plaintiffs' notice violated the court's prior orders to limit discovery to the claims still at issue in the case.[11] The court noted that if the defendants still sought a protective order after the plaintiffs' renewed notice, the parties were to confer and promptly seek to resolve their dispute. The court stated:

---

[1] ECF No. 81.
[2] ECF No. 92.
[3] ECF No. 134.
[4] ECF No. 227.
[5] ECF No. 228.
[6] ECF No. 232.
[7] ECF No. 275.
[8] *Id*. at 2.
[9] *Id*. at 6.
[10] *Id*. at 3.
[11] *Id*. at 4.

> Only after the parties have conducted this second, good-faith discussion will the court consider any additional motion on the issue. If briefing is necessary, the defendants shall list the topics for which they seek a protective order by number. Then for each topic they shall be required to show good cause why the court should issue a protective order under Federal Rule of Civil Procedure 26(c)'s enumerated categories: annoyance, embarrassment, oppression, or undue burden or expense.[12]

Conferences were held by the parties after the court's order of January 28, 2016. The parties conferred in excess of six hours in conferences on February 22, 2016, and March 2, 2016. After the first conference, plaintiffs provided a revised list, which the parties discussed at the second conference. On March 3, 2016, plaintiffs served another list of topics which included a number of new topics.

On April 7, 2016, plaintiff filed a notice to take the Fed. R. Civ. P. 30(b)(6) deposition of Citigroup's corporate designee on April 25, 2016.[13] The notice listed 20 topics for examination.[14] On April 22, 2016, Citigroup filed a motion for protective order and a motion to quash.[15] Citigroup sought protection from and to quash certain topics in plaintiffs' notice.[16] On May 9, 2016, the court stayed the case after the parties sought mediation.[17] Mediation occurred on June 23, 2016. On July 6, 2016, the court was advised that the mediation was unsuccessful.[18]

On October 31, 2016, the court granted Citigroup's motion in part and denied it in part.[19] The court quashed fourteen of the topics designated in plaintiffs' notice. The court denied Citigroup's motion concerning the following topics: 10, 42rr, 43ss, 44tt, 45uu and 46vv. The court directed the parties to complete the Rule 30(b)(6) deposition by December 31, 2016.[20] On November 14, 2016, plaintiffs filed a motion to review. The parties then consented to an

---

[12] *Id.* at 5-6.
[13] ECF No. 337.
[14] *Id.*
[15] ECF No. 349.
[16] ECF No. 350.
[17] ECF No. 367.
[18] ECF No. 368.
[19] ECF No. 390.
[20] *Id.* at 20.

extension of time to extend the Rule 30(b)(6) depositions. On December 19, 2016, the court granted the extension and allowed the parties until forty-five (45) days following a ruling by the district court on the aforementioned motion for review and other matters to complete the Rule 30(b)(6) depositions.

On February 17, 2017, Judge Crow denied plaintiffs' motion for review. Various problems again arose in the efforts to schedule the deposition of Citigroup's representative.[21] Upon the motion of the parties, the court allowed until May 31, 2017, to complete the deposition.[22] The deposition was subsequently scheduled for May 30, 2017.[23] The deadline was then extended to June 15, 2017, upon motion of the parties.[24] The deposition was scheduled for June 13, 2017.[25]

Citigroup produced Jason Cramer as its Rule 30(b)(6) representative. Mr. Cramer is a director of CitiMortgage. He reports to the chief operating officer of CitiMortgage.

The deposition proceeded on the following six topics:

10. The role and relationship of CitiGroup, Inc. to each Defendant (CitiMortgage, CitiBank, f.k.a. CitiCorpTrust Bank, Primerica) and CitiAssurance (the PWP administrator or the a.k.a., American Health and Life Insurance Company) during the time of the Schneider's 2007 loan or 2010 refinance.

42rr. Whether and, if so, what involvement Citigroup had in the servicing of the Loan.

43ss. Whether and, if so, what involvement Citigroup had in communicating with the Schneiders following their application in or around May 2010 to refinance the Loan with Citibank.

44tt. Whether and, if so, what involvement Citigroup had in evaluating the Schneiders' application in or around May 2010 to refinance the Loan with Citibank.

---

[21] See ECF No. 455.
[22] ECF No. 462.
[23] ECF No. 466.
[24] ECF No. 470.
[25] *Id.*

4

45uu. The corporate structure as between CitiMortgage, Citibank, and Citigroup, and Primerica in 2007 through 2010.

46vv. All sources of direct and indirect revenue and total amount of revenue anticipated to be received by Citigroup in connection with the Schneiders' initial refinance loan application to Citibank in or around May 2010, if the application had been approved, and the percentage of income to be derived from the approved application.

II.

In their motion, plaintiffs raise a variety of arguments. Plaintiffs suggest that Mr. Cramer was not prepared to address "many" of the topics. They further suggest that he was not provided with sufficient information to answer their questions and, in some cases, was simply "guessing" at the answers. Finally, they contend that "much" of what Mr. Cramer testified to was "inaccurate" because it conflicted with "actual documents."

III.

Rule 30(b)(6) governs deposition notices and subpoenas directed to organizations.[26] The rule requires the named organization to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf.[27] The rule also requires the designated witnesses to testify about information known or reasonably available to the organization.[28]

The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not of the individual deponents.[29] In a proper Rule 30(b)(6) deposition, "there is no distinction between the corporate representative and the corporation."[30] A corporation has a duty under Rule

---

[26] Fed.R.Civ.P. 30(b)(6).
[27] *Id.*
[28] *Id.*
[29] *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006).
[30] *Id.*

30(b)(6) to provide a witness who is knowledgeable in order to provide "binding answers on behalf of the corporation."[31]

Rule 30(b)(6) is not designed to be a memory contest.[32] Certain questions may seek details so minute that a witness could not reasonably be expected to answer them.[33] However, a corporation has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."[34]

IV.

The court's review of the deposition excerpts provided by the parties reveals that Mr. Cramer examined a variety of written materials in preparation for the deposition. He also relied upon his own experience in managing default servicing operations at CitiMortgage.

Four of the six topics are specific to plaintiffs' loan. Plaintiffs sought information on Citigroup's (1) involvement in the servicing of the loan (Topic 42rr); (2) involvement in communicating with them following their refinance application in May 2010 (Topic 43ss); (3) involvement in evaluating their refinance application in May 2010 (Topic 44tt); and (4) anticipated sources of direct and indirect revenue from the 2010 refinance application if it had been approved (Topic 46vv).

With regard to Citigroup's involvement with the servicing of the loan or the refinance application, Mr. Cramer testified that Citigroup did not service plaintiffs' loan or interact with plaintiffs concerning their request for refinancing. He testified that Citigroup was a bank

---

[31] *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999).
[32] Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 150 (S.D.N.Y. 1997).
[33] See, e.g., *United States ex. rel. Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 25 (D.D.C.2006) ("Without a photographic memory, [the witness] could not reasonably be expected to testify as to the loan numbers ... for sixty-three different loans.").
[34] *Starlight*, 186 F.R.D. at 639.

holding company, and as such, it is the corporate vehicle for financial reporting and public disclosures on behalf of itself and other Citi entities. He confirmed on numerous occasions that Citigroup does not originate or service mortgage loans. In making these statements, Mr. Cramer indicated that he relied upon documents provided to him by Citigroup's counsel as well as his personal knowledge of the responsibilities of Citigroup and CitiMortgage.

The court finds that Mr. Cramer was adequately prepared to respond to these topics. Mr. Cramer also provided the requested information under each of these topics. His testimony was responsive to plaintiffs' counsel's questions. Although plaintiffs' counsel did not approve of Mr. Cramer's answers, the court finds that he was adequately prepared, and did properly respond to the questions.

Plaintiffs also contend that Mr. Cramer was unable to specify any amount of revenue that Citigroup realized from the loan or would have realized from the refinancing. Mr. Cramer stated he was unable to provide this information and why he was unable to provide it. He explained that Citigroup is a holding company and "[t]hey're not in the day-to-day management of individual sources of revenue for each of [the other] entities."

The court finds that Mr. Cramer was adequately prepared for this topic. He provided all of the information he was able to procure and explained why he could not provide any additional answers. Again, the court believes that Mr. Cramer's responses were sufficient. As the court has recognized on numerous occasions in this case, the court cannot decide the accuracy of information provided in discovery.

Finally, plaintiffs complain that Mr. Cramer failed to adequately address the two topics on the role and relationship between Citigroup and the other defendants as well as a non-party.

Plaintiffs contend that Mr. Cramer was unprepared to address these topics. Plaintiffs suggest that his review of only public documents was inadequate.

Once again, the court finds Mr. Cramer properly prepared to respond to these topics. He did rely upon "publicly available documents that showed the corporate structure of [the] entities," but he also relied upon his own experience as a director of CitiMortgage. He addressed all of the entities noted in the topics and discussed their various roles. He also talked about their policies and the oversight at each of the entities. Plaintiffs are skeptical about some of Mr. Cramer's answers, but again the court cannot determine the accuracy of those answers.

In sum, the court finds that plaintiffs' motion does not support their claim that Citigroup's deponent was inadequate in specific requests. Citigroup properly produced a deponent to speak on its behalf. The court finds that Mr. Cramer was adequately prepared and he properly responded to plaintiffs' counsel's questions.

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Finding of Violation of Rule 30(b)(6) (ECF No. 419) is hereby denied.

**IT IS SO ORDERED.**

Dated this 30th day of October, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius<br>
K. Gary Sebelius<br>
U.S. Magistrate Judge