IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL A. SCHNEIDER
and AMY L. SCHNEIDER

        Plaintiffs,

  v.                                                                       No. 13-4094-SAC

CITIMORTGAGE, INC.,
et. al.,

        Defendants.


MEMORANDUM AND ORDER

        This case comes before the court on the plaintiffs' motion for review (ECF# 509) of the magistrate judge's order (ECF# 503) filed October 30, 2017. This order denied the plaintiffs' motion which had asked for the defendant Citigroup, Inc.'s ("Citigroup's") designated corporate representative to be found unprepared for the Fed. R. Civ. P. 30(b)(6) deposition that occurred on June 13, 2017.  In seeking review, the plaintiffs argue the magistrate judge erred, because Mr. Jason Cramer, the witness designated and produced by Citigroup, lacked personal experience with Citigroup as a corporation, was not given full access to Citigroup information, and was acquainted only with information provided by Citigroup's counsel which was "publicly available information on financial statements." ECF# 510, p. 4. In short, the plaintiffs argue that Mr. Cramer

was not capable of testifying, as required by Fed. R. Civ. P. 30(b)(6), "about information known or reasonably available to the organization," because he lacked experience specific to the plaintiffs' claims, and because he was not provided with the necessary preparation and documents so as to testify on the six court-ordered topics.

A magistrate judge's order addressing non-dispositive pretrial matters is not reviewed de novo, but it is reviewed under the more deferential standard in which the moving party must show the order is "clearly erroneous or contrary to the law." *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); see Fed. R. Civ. P. 72(a). The clearly erroneous standard governs review of the magistrate judge's factual findings and requires affirming such findings unless the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (internal quotation marks and citations omitted). The contrary to the law standard governs review of the magistrate judge's "purely legal determinations," and authorizes setting aside an order that fails to apply the correct legal standard or that misapplies the correct legal standard determined from the relevant statutes, case law, or rules of procedures. *Auman v. State of Kansas*, 2017 WL 3977855, at *2 (D. Kan. Sep. 11, 2017) (internal quotation marks and citation omitted). The

plaintiffs' motion fails its burden of showing that the magistrate judge's order is clearly erroneous or contrary to the law.

In his order, the magistrate judge outlined the protracted procedural history that eventually culminated in the deposition of Mr. Cramer, a director of CitiMortgate, on the following six topics allowed by the court:

> 10. The role and relationship of CitiGroup, Inc. to each Defendant (CitiMortgage, CitiBank, f.k.a. CitiCorpTrust Bank, Primerica) and CitiAssurance (the PWP administrator or the a.k.a., American Health and Life Insurance Company) during the time of the Schneider's 2007 loan or 2010 refinance.
> 42rr. Whether and, if so, what involvement Citigroup had in the servicing of the Loan.
> 43ss. Whether and, if so, what involvement Citigroup had in communicating with the Schneiders following their application in or around May 2010 to refinance the Loan with Citibank.
> 44tt. Whether and, if so, what involvement Citigroup had in evaluating the Schneiders' application in or around May 2010 to refinance the Loan with Citibank.
> 45uu. The corporate structure as between CitiMortgage, Citibank, and Citigroup, and Primerica in 2007 through 2010.
> 46vv. All sources of direct and indirect revenue and total amount of revenue anticipated to be received by Citigroup in connection with the Schneiders' initial refinance loan application to Citibank in or around May 2010, if the application had been approved, and the percentage of income to be derived from the approved application.

ECF# 503, pp. 4-5). The magistrate judge understood the plaintiffs' arguments to be that Mr. Cramer was not prepared to address "many" of the topics, was not provided sufficient information to answer, was simply guessing at some answers, and was inaccurate and conflicted with "actual documents." *Id.* at 5.

The magistrate judge plainly articulated and applied the correct Rule 30(b)(6) requirements noting that a designated witness is "to testify about information known or reasonably available to the organization," that the testimony "represents the knowledge of the corporation, not of the individual deponents," and that it is the corporation's duty to designate a witness "who is knowledgeable in order to provide binding answers on behalf of the corporation." *Id.* at pp. 5-6 (internal quotation marks and footnotes omitted). The plaintiffs argue the magistrate judge misapplied these legal standards by only judging Mr. Cramer's personal efforts rather than assessing whether Mr. Cramer was knowledgeable on behalf of Citigroup despite his lack of experience and his limited contact with corporate knowledge and documents of Citigroup. There is nothing in the magistrate judge's decision showing a misapplication of legal standards. Rather, the decision reflects a reasoned application of the proper legal standards:

> With regard to Citigroup's involvement with the servicing of the loan or the refinance application, Mr. Cramer testified that Citigroup did not service plaintiffs' loan or interact with plaintiffs concerning their request for refinancing. He testified that Citigroup was a bank holding company, and as such, it is the corporate vehicle for financial reporting and public disclosures on behalf of itself and other Citi entities. He confirmed on numerous occasions that Citigroup does not originate or service mortgage loans. In making these statements, Mr. Cramer indicated that he relied upon documents provided to him by Citigroup's counsel as well as his personal knowledge of the responsibilities of Citigroup and CitiMortgage.
> The court finds that Mr. Cramer was adequately prepared to respond to these topics. Mr. Cramer also provided the requested information under each of these topics. His testimony was responsive to plaintiffs' counsel's questions. Although plaintiffs' counsel did not

> approve of Mr. Cramer's answers, the court finds that he was adequately prepared, and did properly respond to the questions.
>
> Plaintiffs also contend that Mr. Cramer was unable to specify any amount of revenue that Citigroup realized from the loan or would have realized from the refinancing. Mr. Cramer stated he was unable to provide this information and why he was unable to provide it. He explained that Citigroup is a holding company and "[t]hey're not in the day-to-day management of individual sources of revenue for each of [the other] entities."
>
> The court finds that Mr. Cramer was adequately prepared for this topic. He provided all of the information he was able to procure and explained why he could not provide any additional answers. Again, the court believes that Mr. Cramer's responses were sufficient.  As the court has recognized on numerous occasions in this case, the court cannot decide the accuracy of information provided in discovery.
>
> Finally, plaintiffs complain that Mr. Cramer failed to adequately address the two topics on the role and relationship between Citigroup and the other defendants as well as a non-party. Plaintiffs contend that Mr. Cramer was unprepared to address these topics. Plaintiffs suggest that his review of only public documents was inadequate.
>
> Once again, the court finds Mr. Cramer properly prepared to respond to these topics. He did rely upon "publicly available documents that showed the corporate structure of [the] entities," but he also relied upon his own experience as a director of CitiMortgage. He addressed all of the entities noted in the topics and discussed their various roles. He also talked about their policies and the oversight at each of the entities. Plaintiffs are skeptical about some of Mr. Cramer's answers, but again the court cannot determine the accuracy of those answers. In sum, the court finds that plaintiffs' motion does not support their claim that Citigroup's deponent was inadequate in specific requests. Citigroup properly produced a deponent to speak on its behalf. The court finds that Mr. Cramer was adequately prepared and he properly responded to plaintiffs' counsel's questions.

ECF# 503, pp. 6-8. The deposition excerpts submitted to the court fully support the magistrate judge's findings which tracked a proper application of the governing legal standard.

Another argument central to the plaintiffs' motion is that Mr. Cramer could not have been sufficiently prepared, because he did not have

5

access to all corporate information and relied on public filings and financial statements rather than "actual corporate knowledge." ECF# 510, p. 4. Among the argued examples of this, the plaintiffs refer to Mr. Cramer's deposition testimony indicating that he had looked at Citigroup's financial statements which reflected only total revenue figures for the other entities and that he discerned from these annual reports no evidence of Citigroup's involvement in servicing or refinancing loans. Mr. Cramer, however, also testified repeatedly that Citigroup as a holding company deals with and reports the entity earnings of the different subsidiary corporations and does this without managing or reporting the individual revenue sources of the underlying entities. ECF# 511-2, pp. 20-22. Mr. Cramer explained that this testimony was based on more than his conclusions drawn from the public financial reports:

> A. My understanding is the entities generate revenue, and Citigroup reports that and makes it available to shareholders. They don't have—Citigroup does not have individualized specific revenue generating departments rolling up specific to Citigroup itself.
> Q. And do you form that understanding?
> A. Based on my understanding and review of the corporate documents and how the entities are structured and as being a director of a fairly large entity such as CitiMortgage.

*Id.* at p. 22. From reading those portions of Mr. Cramer's deposition submitted as exhibits, the court's fair impression is that Mr. Cramer was careful to link his conclusions on the corporate activities and practices to the relevant time period based on documents contemporary to that period. This is because he did not work for the defendants during that earlier period. But,

6

Mr. Cramer also testified to conclusions drawn from his own work and experience with the defendant as being consistent with these earlier documents:

> Q. As to the discussion that you didn't specifically use in number 2, which is for simplicity's sake, is there another organizational chart that you were able to rely on?
> A. Not in the material, but from my two years of being a director at CitiMortgage, you're obviously shown documents, materials around Citi Holdings and other entities that roll up into Citigroup. So you know, just from my knowledge of the workings of the company and being at other servicers that had holding companies similar to Citi, just – these documents just sort of solidified my understanding of the organizational structure.

ECF# 511-2, p. 25. The court disagrees with the plaintiffs' characterization of Mr. Cramer's experience here being limited "in default" and not having "any bearing on the topics." ECF# 510, p. 7. The court finds no basis for concluding that the magistrate judge's understanding of Mr. Cramer's testimony was mistaken as a matter of law or fact.

Finally, the plaintiffs complain that Mr. Cramer had not been given and asked to review "contracts" between the different corporate entities in order to testify as to the role and relationship between Citigroup and the other corporations. The defendants rightly note that none of the court-ordered topics reference any particular contracts being at issue or relevant here. The plaintiffs apparently produced such contracts at the deposition, and the witness had not seen them before and was unable to testify about them. The plaintiffs do not explain how these contracts are relevant in establishing any relationship between the corporate entities that

7

is different from the deponent's testimony. Without this established relevance connection, there is nothing but speculation that Mr. Cramer was unprepared because he had not reviewed these contracts. The excerpts of Mr. Cramer's deposition submitted to the court show he was prepared to testify on the role and relationship between Citigroup and the other corporate entities. His deposition was consistent and clear that Citigroup was a holding company that did not provide, did not supervise, and was not involved with the banking services in question. *See, e.g.,* ECF#511-2, pp. 11, 15, 20-23, 29-30, 32-34, and 39. As the magistrate judge reiterated, the plaintiffs' speculative skepticism about the accuracy of the deponent's answers is not a basis for determining that the defendant Citigroup did not comply with Rule 30(b)(6).

For all of the reasons stated above, the court denies all relief requested in the plaintiff's motion for review. Before closing, the court wants to highlight this single-sentence paragraph that is a parting plea made by the plaintiffs:

> There is no doubt the case has drug out in time and been a struggle however, this Court should continue on the path to justice and require Citigroup to comply with the rules expected as to the 6 court ordered topics that are all ruled relevant and tied to the Plaintiff's theory of the case and this Court's order for discovery when denying summary judgment rather than let them escape their duties being rewarded for the failure frustrating the ultimate purpose of discovery attempting to avoid liability to create an absence of facts by failing to provide Mr. Cramer with corporate knowledge, not even a contract between the parties.

ECF# 510, p. 10. The court shares the plaintiffs' opinion that this case exemplifies protracted and contentious litigation. Indeed, this is the oldest pending case on this chamber's docket.  The number of filings in this case certainly is excessive in light of the subject matter, facts, and legal issues in this case. As evidenced by the above quotation and by other statements in many other filings, there seems to be some mistaken notions. Justice need not be like a slow machine grinding out results with extended delays. Justice need not accommodate parties' repeated requests for extensions of time. Justice is not served when the parties' engage in unabated efforts to dispute and disagree over almost every matter, to make personal accusations, to regularly supplement filings and seek leave for filing sur-replies, to file motions to reconsider and review on many discovery orders, and to litigate with little regard to the expense and cost upon all. These points should be evident because the Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Thus, this case is in a posture that warrants taking an additional Rule 1 step to foster a just, speedy, and less expensive determination. From this date forward, no party will be granted more than one extension of time to meet any of the required court or rule deadlines with the exception for circumstances that are truly urgent and/or emergency in character. The court admonishes the parties that the court is actively

considering imposing additional measures consistent with Rule 1 should the parties not move this litigation forward in an expeditious and reasonable manner. Nothing that appears here is intended to reflect negatively upon the magistrate judge who has worked diligently and expertly in an effort to bring some Rule 1 semblance to the progress of this case.

IT IS THEREFORE ORDERED that the plaintiffs' motion for review (ECF# 509) of the magistrate judge's order (ECF# 503) filed October 30, 2017, is denied;

IT IS FURTHER ORDERED that no party will be granted more than one extension of time to meet any of the required court or rule deadlines with the exception for circumstances that are truly urgent and/or emergency in character.

Dated this 22nd day of December, 2017 at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge